# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

---

MARYAN JANAY; YUSSUF HUSSEIN
SHEIKH,

        *Plaintiffs*,

        v.

ANTONY J. BLINKEN, *Secretary of the U.S.
Department of State*,

        *Defendant.*

Civil Action No. 23-3737 (RDM)

---

## <u>MEMORANDUM OPINION</u>

Maryan Janay and her spouse Yussuf Hussein Sheikh, a citizen of Kenya, bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361, against Defendant Anthony J. Blinken, the Secretary of the U.S. Department of State.  Dkt. 1 at 3, 6 (Compl. ¶ 16).  Now before the Court are Plaintiffs' motion to compel production of the administrative record, Dkt 9, and Defendant's motion to dismiss, Dkt. 7.  For the reasons that follow, the Court will deny Plaintiffs' motion, will grant Defendant's motion, and will dismiss the complaint.

## I. BACKGROUND

The following factual allegations are taken from Plaintiffs' complaint, which the Court accepts as true for purposes of resolving Defendant's motion to dismiss.  *See Al-Gharawy v. U.S. Dep't of Homeland Security*, 617 F. Supp. 3d 1, 6 (D.D.C. 2022); *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015).

Plaintiff Janay is a United States Citizen.  Dkt. 1 at 14 (Compl. ¶ 62).  On January 24,

2020, she submitted a Form I-130 to the U.S. Citizenship and Immigration Service ("USCIS") to

establish her qualifying relationship with Plaintiff Sheikh, who is a citizen of Kenya.  *Id.*

(Compl. ¶¶ 63–64).  The USCIS approved the Form I-130 on September 16, 2021.  *Id.* at 15

(Compl. ¶ 65).  Then, on October 14, 2021, Plaintiffs timely submitted their online immigrant

visa application.  *Id.* (Compl. ¶ 67).  After submitting the required documents and paying a

processing fee, Plaintiffs were informed on November 8, 2022 that their application was

"documentarily complete."  *Id.* (Compl. ¶¶ 67–68).

On July 9, 2023, Plaintiff Sheikh completed a visa interview at the U.S. Embassy in

Djibouti.  *Id.* (Compl. ¶ 69).  Immediately after the interview, Plaintiff Sheikh was informed that

his application was being placed in "administrative processing," and a consular officer required

him to submit a separate form setting forth "15 years of detailed history," which Plaintiff Sheikh

did that same day.  *Id.* (Compl. ¶¶ 70–72).[1]  Plaintiff Sheikh's application has remained

"refused" since then.  *Id.* at 15–16 (Compl. ¶¶ 73–75).  When he has checked the status of his

visa application online, *id.* at 16 (Compl. ¶ 75), an explanatory blurb notes:  "If you were

informed by the consular officer that your case was refused for administrative processing, your

case will remain refused while undergoing such processing.  You will receive another

adjudication once such processing is complete," Dkt. 1-2 at 1 (Ex. B).

---

[1] Plaintiffs now seek to "correct" their complaint to instead allege that a consular officer
"informed [Plaintiff Sheikh] that after responding to the [supplemental questions], his visa *would
be issued*."  Dkt. 8 at 14 & n.2 (emphasis added).  It goes without saying, however, "that a
complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Arbitraje
Casa De Cambio v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (internal
quotation marks and citation omitted).

After waiting for a little over five months for a decision, Plaintiffs brought this action against Secretary Blinken.  Dkt. 1 at 3 (Compl.).  Plaintiffs allege that the delay has "placed a severe emotional and financial strain" on them and that they "have a three-year-old child together and wish to be reunited as a family."  *Id.* at 4 (Compl. ¶ 7).  They seek a court order declaring the delay in adjudicating Plaintiff Sheikh's visa application "unreasonable" and compelling Defendant and his subordinates to ensure that the application is adjudicated without "any further unreasonable delay."  *Id.* at 28–29 (Compl.).

Pending before the Court are Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Dkt. 7 at 9, and Plaintiffs' motion to compel production of the administrative record, Dkt. 9.  Both matters are fully briefed and ripe for consideration.  *See* Dkt. 8; Dkt. 10; Dkt. 11.

## II. LEGAL STANDARD

Because "defect[s] of standing" constitute "defect[s] in subject matter jurisdiction," *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987), a challenge to standing is properly raised on a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(1).  At the motion to dismiss stage, a challenge to the plaintiff's standing "may take one of two forms."  *Hale v. United States*, 2015 WL 7760161, at *3 (D.D.C. Dec. 2, 2015).  First, a Rule 12(b)(1) motion "may raise a 'facial' challenge to the Court's jurisdiction."  *Id.*  A facial challenge asks whether the complaint alleges facts sufficient to establish the court's jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Owner-Operator Indep. Drivers Ass'n v. U.S. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018).  To survive a facial challenge to standing, the plaintiff must plausibly allege the "three elements" that comprise the "irreducible constitutional minimum of standing": injury in fact, causality, and redressability.  *Lujan*, 504 U.S. at 560–61.

In this posture, the Court must accept the factual allegations of the complaint as true, *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006), but must also assess the "plausibility" of the plaintiff's standing allegations in light of the relevant context and the Court's "judicial experience and common sense," *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Alternatively, "a Rule 12(b)(1) motion may pose a 'factual' challenge to the Court's jurisdiction." *Hale*, 2015 WL 7760161, at *3. When a motion to dismiss is framed in this manner, the Court "may not deny the motion . . . merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant" but "must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000). The Court "has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction," so long as it "afford[s] the nonmoving party an ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984) (internal quotation marks and citations omitted).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), in contrast, "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002); *see* Fed. R. Civ. P. 12(b)(6). In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'" *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (alterations in original) (quoting *Iqbal*, 556 U.S. at 675, 678). The complaint need not include

"detailed factual allegations," and a plaintiff may survive a Rule 12(b)(6) motion even if

"recovery is very remote and unlikely," so long as the facts alleged in the complaint are "enough

to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555–56 (2007).  The Court may consider only "the facts contained within the four corners of the

complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006),

along with "any documents attached to or incorporated into the complaint, matters of which the

court may take judicial notice, and matters of public record," *United States ex rel. Head v. Kane*

*Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

### III. ANALYSIS

**A.      Plaintiffs' Motion to Compel**

Plaintiffs move to compel production of the administrative record pursuant to Local Civil

Rule 7(n).  Dkt. 9 at 1.  That rule provides, as relevant here, that "[i]n cases involving the judicial

review of administrative agency actions, unless otherwise ordered by the Court, the agency must

file a certified list of the contents of the administrative record with the Court . . . simultaneously

with the filing of a dispositive motion."  LCvR 7(n)(1).  Here, Defendant did not file a certified

list with its motion to dismiss.  *See* Dkt. 7 at 34 n.3.  Plaintiffs, accordingly, argue that Defendant

has failed to comply with Local Rule 7(n), and they ask the Court to compel Defendant to

comply before resolving the pending motion to dismiss.  *See* Dkt. 9 at 5–7.

Plaintiffs often move to compel production of the administrative record in immigration

mandamus cases, and this Court has routinely rejected those motions.  In opposing Plaintiffs'

motion, Defendant urges the Court to adopt a blanket rule holding that Local Rule 7(n) does not

apply to cases of this type because the rule refers to "judicial review of administrative agency

*actions*" and thus does not apply to cases that involve allegations of agency *inaction*.  Dkt. 11 at

3–4 (emphasis added).  The Court is unpersuaded that it should "adopt that categorical view, at least on the arguments currently before it."  *Tahavori v. Blinken*, 2024 WL 1328546, at \*2 (D.D.C. Mar. 28, 2024).  As explained in *Tahavori v. Blinken*, 2024 WL 1328546, at \*2 (D.D.C. Mar. 28, 2024):  "In the administrative law context, 'agency action' is generally understood to include the 'failure to act.'  And various failure-to-act cases are commonly and properly decided based on an administrative record."  *Id.* (quoting 5 U.S.C. § 551(13)) (collecting cases).

Nonetheless, the Court concludes that the administrative record is unnecessary to decide the threshold legal questions presented by the pending motion to dismiss, including whether Plaintiffs have plausibly alleged unreasonable delay.  Because "the administrative record is not necessary for [the court's] decision regarding [the] motion to dismiss," *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (first alteration in original) (internal quotation marks and citation omitted); *see also Arab v. Blinken*, 600 F. Supp. 3d 59, 65 n.2 (D.D.C. 2022), the Court will waive compliance with Local Civil Rule 7(n) and will, accordingly, deny Plaintiffs' motion to compel production of the administrative record.

## B.     Defendant's Motion to Dismiss

Defendant advances four arguments in his motion to dismiss: (1) that Secretary Blinken lacks authority to grant the relief Plaintiffs seek; (2) that Plaintiffs' claims are barred by the consular non-reviewability doctrine; (3) that Plaintiffs' claims fail because they do not identify a discrete agency action that a consular officer was required to, but did not, take; and (4) that any alleged delay is reasonable as a matter of law.  Dkt. 7 at 9–10.

The Court will address each argument in turn.

1.      *Authority of the Secretary to Ensure Timely Adjudication of Visa Applications*

Defendant first argues that Plaintiffs have brought suit against the wrong party because the "INA grants consular officers exclusive authority to review applications for visas, *precluding even the Secretary of State* from controlling their determinations." Dkt. 7 at 13 (emphasis in original) (internal quotation marks and citation omitted). But that argument is a *non sequitur*: No one doubts that the decision to grant or deny a visa application is left exclusively to consular officers. The question here, however, is whether the Secretary could, if ordered by the Court, ensure that the relevant consular officer renders a final decision on Plaintiff Sheikh's visa application—up or down—within a reasonable period of time. Defendant, again, responds with a *non sequitur*, arguing that "[o]bviously, where a plaintiff seeks to challenge rulemaking or another policy or practice of an Executive Branch agency," suing the agency head would be appropriate, but "Plaintiffs do not seek to challenge a State Department policy, rule, practice, or regulation." Dkt. 10 at 8. Once again, that premise, and the nature of Plaintiffs' suit, is undisputed. But assuming, as Defendant's response does, that the Secretary has authority to set policy and to specify rules requiring consular officers to adjudicate visa applications within a reasonable time, Defendant fails to explain why that authority falls short of allowing the Secretary to ensure that no specific application, once brought to his attention, has fallen through the cracks and to ensure that such an application is resolved without undue delay.

To the extent Defendant's argument constitutes a defense on the merits, he has failed to carry his burden of demonstrating that the complaint fails as a matter of law because it names the wrong defendant. But Defendant, in his reply brief, gestures at a related issue, which the Court must consider before proceeding to the merits: he argues that because only a consular officer has authority to adjudicate Plaintiff Sheikh's visa application, Plaintiffs lack standing to sue the

Secretary for unreasonable delay.  Dkt. 10 at 8.  Because that argument goes to the Court's Article III jurisdiction—that is, the Court's power to act—the Court must resolve this issue at the threshold, despite the scant briefing.  *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1996).

Because this case remains "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice."  *Lujan*, 504 U.S. at 561.  The Court must, accordingly, consider whether Plaintiffs have plausibly alleged (1) a "concrete," "particularized," and "actual or imminent" "invasion of a legally protected interest" that is (2) "fairly traceable to the challenged action of the defendant" and (3) "likely" to be "redressed by a favorable decision."  *Id.* at 560–61 (internal quotation marks and citations omitted); *see also Humane Soc'y*, 797 F.3d at 8.

Defendant does not dispute that Plaintiffs have suffered and will continue to suffer a cognizable injury.  Rather, reprising the contention that Plaintiffs have named the wrong defendant, Defendant maintains that Plaintiffs lack standing to sue the Secretary of State because he is not "'personally responsible' for any delay in re-adjudicating their Visa Application," and because he is "without the authority or duty" to do so.  Dkt. 10 at 8–9.  Translated to the language of standing, Defendant contends that Plaintiffs' injury is not traceable to anything the Secretary did (or did not do) and is not redressable because he lacks authority to do anything about the delay.

As noted above, Defendant is correct that consular officers have "exclusive authority to review applications for visas."  Dkt. 7 at 13 (quoting *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021)).  But, as this Court explained in *Al-Gharawy v. U.S. Department of Homeland Security*, 617 F. Supp. 3d 1 (D.D.C. 2022), although the Secretary lacks authority to

control which visa applications consular officers grant or deny, nothing precludes him from directing the consular officers to decide pending applications "within a reasonable time." *Id.* at 10 (quoting 5 U.S.C. § 555(b)).[2]  Notably, Defendant does not take issue with this premise—even in pressing his standing argument—but, instead, merely repeats the argument that he "cannot adjudicate, or re-adjudicate, an application for a visa."  Dkt. 7 at 13; *see* Dkt. 10 at 7 (asserting that Secretary Blinken "cannot adjudicate, or re-adjudicate, a visa application" and "does not have any role in this alleged delay"); *id.* at 8 (arguing that Secretary Blinken is not "'personally responsible' for any delay in re-adjudicating" the visa application at issue).  Indeed, beyond arguing that the Secretary lacks authority to *grant* or *deny* individual visa applications, Defendant does not take issue with Plaintiffs' (unremarkable) allegation that the Secretary "has supervisory responsibility over the U.S. Embassy."  Dkt. 1 at 9 (Compl. ¶ 28).  Nor does Defendant offer any justification for his sweeping suggestion that because he was not "personally responsible" for any delay in the adjudication of Plaintiff Sheikh's visa application, Plaintiffs lack standing to sue him, as the head of the agency responsible for ensuring that the INA is properly administered and enforced.  If Defendant means to suggest that this Court lacks Article III jurisdiction to decide cases brought against an agency head, where the agency head was not personally involved in the challenged action or inaction, that argument would call into question decades of precedent and, in any event, is entirely unsupported.  In short, Defendant offers no persuasive reason to conclude that Plaintiffs lack standing to sue the Secretary for failing to ensure that the visa application at issue is adjudicated—one way or the other—in a timely manner.

---

[2] *Accord, e.g.*, *Ordian v. Blinken*, 2024 WL 3251226, at *2 (D.D.C. July 1, 2024); *Shahnia v. U.S. Dep't of State*, 2024 WL 3202225, at *2 (D.D.C. June 27, 2024); *Khazei v. Blinken*, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023).

The Court does not stop there, however, because it has an independent duty to consider whether it has jurisdiction, and a recent decision, *Yaghoubnezhad v. Stufft*, 2024 WL 2077551, at *5 (D.D.C. May 9, 2024), addresses this same issue and disagrees with *Al-Gharawy*.  *See also Zakeri v. Blinken*, 2024 WL 3273418, at *3 & n.3 (D.D.C. July 2, 2024) (adopting *Yaghoubnezhad*'s reasoning).  The *Yaghoubnezhad* Court concluded on a motion to dismiss that the plaintiff's claim against the Secretary of State for unreasonable delay was not redressable because the Secretary lacks authority to provide "administrative guidance" regarding "the pace of visa adjudications."  *Id.  Yaghoubnezhad* reached the opposite conclusion as to the Deputy Assistant Secretary for Visa Services, holding that the Court had jurisdiction to consider the plaintiff's claim against that official for unreasonable delay.  *Id.* at *5–6.  The difference, according to *Yahgoubnezhad*, lays in "the plain meaning of § 1104(a)," which *Yahgoubnezhad* read to divest the Secretary—and the Secretary alone—of any authority relating to the issuance of visas, including the authority to provide guidance on the pace of adjudications.  *Id.* at *5.  For the reasons explained below, the Court is unpersuaded that the language of § 1104(a) is so plain or that the question is so clear that the Court should dismiss the claim against the Secretary at the outset for lack of jurisdiction (and without meaningful briefing by the parties).

As an initial matter, the Court notes that these issues of traceability and redressability turn on a question of statutory interpretation that neither side has meaningfully briefed—that is, whether the Secretary has statutory authority, not to grant or deny a visa, but to ensure that the consular officer acts in a timely manner.  For purposes of assessing standing, however, the Court must "assume" that Plaintiffs "will prevail on the merits of their claims unless their arguments that the relief sought is legally available and that [they are] entitled to it is so implausible that it is insufficient to preserve jurisdiction."  *Sandpiper Residents Assoc. v. U.S. Dep't of Hous. &*

*Urban Dev.*, 2024 WL 3308358, at *4, *6 (D.C. Cir. July 5, 2024) (discussing this principle in the context of mootness and redressability) (internal quotation marks omitted) (quoting *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019)).  The question of subject-matter jurisdiction thus "presents an issue quite separate from the question whether the allegations the plaintiff makes entitle him to relief."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010).  In practice, this means that the "district court has jurisdiction if 'the right of the [plaintiffs] to recover under their complaint will be sustained if the . . . laws of the United States are given one construction and will be defeated if they are given another.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 685 (1946)).

Here, Plaintiffs' contention that the Secretary has the responsibility and authority to ensure that consular officers act—one way or the other—without unreasonable delay is not only plausible, but likely correct.  In reaching a contrary conclusion, *Yahgoubnezhad* relies on the plain language of 8 U.S.C. § 1104(a), which reads, in relevant respects, as follows:

> The Secretary of State shall be charged with the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws *relating to* (1) the powers, duties, and functions of diplomatic and consular officers of the United States, *except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas*; (2) the powers, duties, and functions of the Administrator; and (3) the determination of nationality of a person not in the United States.  He shall establish such regulations; prescribe such forms of reports, entries and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out such provisions.

8 U.S.C. § 1104(a) (emphases added).  On *Yaghoubnezhad*'s reading, the Secretary is "precluded not only" from controlling consular officers' visa determinations—as the Court recognized in *Al-Gharawy*—"but also from administering or enforcing duties that merely 'relate[]' to those determinations."  2024 WL 2077551, at *5 (quoting 8 U.S.C. § 1104(a)).  In short, on *Yahgoubnezhad*'s reading, § 1104(a) divests the Secretary not only of authority to grant or to

deny visas, but also to take *any* action that relates to the administration of the duties of the consular officers.  *Id.*  This limitation on the Secretary's authority, says *Yahgoubnezhad*, includes issuing "guidance for the pace of visa adjudications and the completion of administrative processing."  *Id.*

Although the Court agrees with *Yahgoubnezhad* that the phrase "relating to" is ordinarily given a broad meaning, *see Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting Black's Law Dictionary 1158 (5th ed. 1979)); *Coventry Healthcare v. Nevils*, 581 U.S. 87, 95–96 (2017), that maxim reveals little about the scope of the overall provision at issue here. As the Supreme Court has admonished, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Sturgeon v. Frost*, 577 U.S. 424, 438 (2016).

As an initial matter, it bears note that the phrase "relating to" appears twice in the sentence at issue.  The first appearance broadly affirms the Secretary's responsibility to administer and enforce "immigration and nationality laws *relating to* . . . the powers, duties, and functions of diplomatic and consular officers[.]"  8 U.S.C. § 1104(a) (emphasis added).  In other words, § 1104(a) starts by "charg[ing]" the Secretary with "the administration and the enforcement of" the INA "and all other immigration and nationality laws," *id.*, that "have bearing" on, "concern" or "pertain" to, *Morales*, 504 U.S. at 383, the powers, duties, and functions of consular officers.  Absent further limitation, then, the Secretary is empowered, in the broadest of terms, to supervise the powers, duties, and functions of consular officers.  Consistent with *Yahgoubnezhad* (and *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)), this initial clause would certainly "include administrative guidance for the pace of visa adjudications."  2024 WL 2077551, at *5.

The second appearance of the phrase "relating to"—the appearance that *Yahgoubnezhad* addresses—is found in an exception clause, which limits this otherwise expansive grant of authority.  But the exception clause does not take back everything that the initial clause grants. Rather, it creates an exception only for "[1] those powers, duties, and functions conferred upon consular officers [2] relating to the granting or refusal of visas."  8 U.S.C. § 1104(a).  According to *Yahgoubnezhad*, this means that the Secretary may not exercise any authority that relates in any way to visa determinations.  But that reading ignores the first half of the exception clause, which limits the reach of the clause to those duties and functions "conferred upon the consular officers," and it ignores the fact that the second appearance of "relating to" merely defines the subset of powers, duties, and functions conferred upon consular officers that the Secretary may not reach.  It would be a mistake to read the second appearance of "relating to" to divest the Secretary of all authority "relating to the granting or refusal of visas," without first asking which "powers, duties, and functions" are "conferred upon the consular officers," 8 U.S.C. § 1104(a).

To answer that question, the Court must start with 22 U.S.C. § 2651a(a)(3)(A), which provides that "the Secretary shall have and exercise any authority vested by law in any office or official of the Department of State," and 8 U.S.C. § 1104(a), which "charge[s] the Secretary with the administration and the enforcement of the provisions of" the INA and "other immigration and national laws."  Section 1104(a), then, limits that sweeping authority, but only with respect to "powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas."  8 U.S.C. § 1104(a).

That text, in turn, requires the Court to consider what "powers, duties, and functions" are "conferred upon consular officers" in 8 U.S.C. § 1201 (or elsewhere).  Section 1201 does not limit the administration of the visa program to the consular officers alone; to the contrary, it

assigns various duties and authorities to the consular officers *and* to the Secretary.  *See* 8 U.S.C. § 1201(a)(1) (consular officers), (a)(2) (Secretary), (b) (Secretary), (c)(2) (Secretary), (c)(3) (consular officers), (c)(4) (Secretary), (d) (consular officers), (f) (consular officers), (g) (consular officers) & (i) (both).  And, most importantly, the primary, and arguably the only relevant, "power[], dut[y], or function" conferred upon the consular officers is the discretion to "issue" visas to "[]eligible" applicants, *id.* § 1201(a) & (g); *see also* 8 U.S.C. § 1182.  Establishing a pace or timetable for adjudicating visa applications is not among the "powers, duties, or functions" expressly assigned to the consular officers.

Accordingly, read in context, *see Yates v. United States*, 574 U.S. 528, 539 (2015), § 1104(a) limits the Secretary's otherwise broad authority to exercise all powers and duties vested anywhere in the State Department and broad responsibility to oversee the "administration and the enforcement of" the INA by, among others, consular officers of the United States—but only when it comes to the discretion of "consular officer[s] [to] issue . . . to an immigrant[,] who has made proper application therefor, an immigrant visa," 8 U.S.C. § 1201(a)(1)(A).  Beyond that narrow exception, nothing in § 1104(a) limits the Secretary's authority to "establish such regulations; prescribe such forms of reports, entries and other papers; *issue such instructions*; and *perform such other acts as he deems necessary for carrying out*" the provisions of the INA.  8 U.S.C. § 1104(a) (emphases added).

Notably, although Defendant maintains that Plaintiffs' suit against the Secretary is improper, he nowhere embraces *Yahgoubnezhad*'s reading of § 1104(a), and for good reason, since doing so would create a substantial limitation on the Secretary's authority to manage the Department and would call into question a host of existing regulations that prescribe procedures relating to the administration of the visa program.  22 C.F.R. § 42.81(a), for example, provides

that "[w]hen a visa application has been properly completed and executed . . . the consular officer must issue the visa, refuse the visa[,] . . . or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."  And, under the subsequent subsection, a "consular officer may not refuse an immigrant visa until" a specified form "has been executed by the applicant." *Id.* § 42.81(b).  Other sections expressly reference timing.  *See id.* § 41.106 ("Consular officers must ensure that the Form DS-160 or, alternatively, Form DS-156 is properly *and promptly* processed . . . ." (emphasis added)).  Each of these regulations "relate[s] to"—that is, concerns or bears upon—the granting or denying of visa applications.

For all of these reasons, the Court can discern no "clear textual limitation," *Yaghoubnezhad*, 2024 WL 2077551, at *5, on the face of 8 U.S.C. § 1104(a), which would bar the Secretary of State from directing consular officers to conclude matters presented to them "within a reasonable time," *Al-Gharawy*, 617 F. Supp. 3d at 10 (quoting 5 U.S.C. § 555(b)).  For present purposes, that is all that is required to ensure that the Court has Article III jurisdiction to resolve Defendant's motion to dismiss the complaint on the merits.  And, on the merits, the Court is equally unpersuaded that the complaint should be dismissed on the ground that it names the Secretary of State and does not name the consular officer.

2. *Consular Nonreviewability*

That brings the Court to Defendant's second argument—that the consular nonreviewability doctrine precludes judicial review in this case.  Dkt. 7 at 9.  Most decisions from this Court have rejected that argument, holding that "the consular non-reviewability doctrine does not bar review of undue-delay claims related to visas mired in administrative processing."  *Khan v. Blome*, 2022 WL 17262219, at *2 (D.D.C. Nov. 29, 2022); *see, e.g., Al-*

*Gharawy*, 617 F. Supp. 3d at 11–17; *Augustin v. Blinken*, 2023 WL 4547993, at *3 (D.D.C. July 14, 2023).  *But see Yaghoubnezhad*, 2024 WL 2077551, at *11.

As this Court explained in *Al-Gharawy*, the "consular nonreviewability doctrine does not apply" when "a consular officer has not rendered a final decision" because, in such situations, the plaintiff is not asking that the Court "review a decision rendered by a consular officer," but, instead, is merely asking that the "consular officer . . . render *a* decision—regardless of what that decision might be."  *Id.* at 11 (emphasis in original).  The Court rejected the contrary view urged by defendants because

> [i]n contrast to the inherently political nature of decisions regarding who should (and should not) be admitted into the United States, the question whether a consular officer has engaged in unreasonable delay in considering an application is not "an area in which legislative action [and] traditional practice indicate that courts are unqualified or that issues are inappropriate for judicial determination," *Saavedra Bruno*, 197 F.3d at 1160 (quotation marks omitted).  Most significantly, considerations of this type implicate political considerations to a far lesser extent; the Court is not asked to exercise—or to second guess the Executive in exercising—the sovereign powers to exclude aliens or to protect "the country against foreign encroachments and dangers."  *Id.* at 1159 (quoting *The Chinese Exclusion Case*, 130 U.S. 581, 609 (1889)).  It is not asked to intercede in diplomatic disputes regarding the denial of visas.  *Id.* at 1159 & n.9.  Nor is the Court asked to opine on a matter committed to agency discretion or beyond the judicial ken.  *Id.* at 1160 & n.11 . . . .  As the Supreme Court has recognized in the context of Section 706(1), where "an agency fail[s] to take a discrete agency action that it is required to take . . . a court can compel the agency to act [even though it] has no power to specify what th[at] action must be."  *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64–65 (2004).

*Id.* at 12–13 (alterations in original).  Finally, the Court explained that, although "the INA vests consular officers with significant discretion to render a substantive decision to grant or deny a visa," it was far less clear that Congress had given "consular officials similarly wide discretion indefinitely to delay a decision on a visa application."  *Id.* at 13.

Defendant asserts that the Supreme Court's recent decision in *Department of State v. Muñoz*, 144 S. Ct. 1812 (2024), "makes clear that any distinction between substantive and

procedural decisions is misplaced." Dkt. 15 at 3. That argument, however, is difficult to square

with what *Muñoz* says. In describing the doctrine of consular nonreviewability, the Supreme

Court focused—as this Court did in *Al-Gharawy*—on the consular officer's decision to grant or

to deny a visa. The Court wrote:

> The Immigration and Nationality Act . . . does not authorize judicial review of a
> consular officer's *denial* of a visa; thus, as rule, the federal courts cannot review
> *those decisions*. This principle is known as the doctrine of consular
> nonreviewability.

*Id.* at 1820 (emphases added). That analysis, moreover, followed the Court's observation that

the decision "'to admit or to exclude an alien' 'is final and conclusive.'" *Id.* (quoting *United*

*States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). Nowhere does the Court

suggest that the doctrine extends beyond that limited universe.

It is true that the *Muñoz* Court addressed whether the government was required to give a

"'facially legitimate and bona fide reason' for why" it denied the plaintiff's husband's visa

application. *Id.* at 1825–27. But the Court ultimately concluded that "procedural due process

[was] an odd vehicle for Muñoz's argument" and that she had no procedural due process right to

an explanation "for why someone else's visa was denied." *Id.* at 1827. And, most significantly,

the case considered whether "a narrow exception" to the bar on judicial review applied only

because the plaintiff was asking to "'look behind the exercise of' the government's discretion to

deny a visa application and "to balance the reason given against the asserted constitutional

right." *Id.* at 1821. Here, in contrast, Plaintiffs do not ask to look behind the consular officer's

discretion to grant or deny Plaintiff Sheikh's visa application. They merely seek a decision—one

way or the other—and *Muñoz* does not speak to the Court's authority to grant that relief.

Nor does *Yaghoubnezhad* offer any persuasive ground to reconsider *Al-Gharawy*.

*Yaghoubnezhad* posits that a "refusal" for administrative processing is a dispositive, final

adjudication and, as a consequence, the consular nonreviewability doctrine bars judicial review. *See* 2024 WL 2077551, at *11.  Defendant agrees, arguing that the "possibility of future reconsideration does not change the fact [that] a refusal, even if possibly revisited, has occurred." Dkt. 10 at 10; *see also id.* at 12; Dkt. 7 at 16–17 ("[T]he consular officer has adjudicated the application as contemplated by the State Department's regulations and the INA.  Indisputably, that decision remains final unless superseded by another decision." (internal citations omitted)).

But the Court has already explained why that argument is unavailing.  *See Al-Gharawy*, 617 F. Supp. 3d at 11–16; *see id.* at 11 (discussing a "long line of decisions from this Court [holding] that the consular nonreviewability doctrine applies only to final decisions and thus does not bar judicial review of a consular officer's delay when a visa application has been provisionally refused pending a final decision").  As the Court observed in *Al-Gharawy*, the State Department "cannot elevate 'form over substance,'" and, instead, the inquiry must focus "on what is actually happening."  *Id.* at 16 (internal quotation marks and citation omitted).  By analogy, an agency cannot avoid judicial review by, for example, characterizing a final, operative decision as interlocutory and pending further review, someday.  By the same token, the State Department cannot evade its obligation (if any) to adjudicate visa applications in a timely manner by characterizing every long-pending application as "refused," even when the consular officer is still "administratively processing" and considering whether to grant the application.  As the Court put it in *Al-Gharawy*, "refused" is not a "get-out-of-review-free card" that, regardless of substance, satisfies the consular officer's duty (if any) to render a timely decision on the application.  *Id.*; *accord, e.g.*, *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 87 (D.D.C. Mar. 22,

2022); *Carter v. U.S. Dep't of Homeland Sec.*, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) ("[R]efusals followed by 'administrative processing' are not 'final decisions.'").[3]

Here, as in *Al-Gharawy*, the factual allegations of the complaint, taken as true for present purposes, provide a plausible basis to conclude that the consular officer has yet to decide whether to grant or to deny Plaintiff Sheikh's visa application.  *See* Dkt. 1 at 15–16 (Compl. ¶¶ 70–78).  Any suggestion to the contrary is belied by the State Department's online case status report, which explains that Plaintiff Sheikh's visa application will "remain refused *while undergoing such processing*" and that, "*once such processing is complete*," he "*will* receive another adjudication."  Dkt. 1-2 at 1 (Ex. B) (emphases added); *see also* Dkt. 1 at 16 (Compl. ¶ 75).  In other words, the application is still being processed and a decision is still forthcoming.  It has only been "refused" in the far-from-literal sense that it has not yet been "granted" or "denied."  For present purposes, however, it is sufficient to conclude that the question is not one that the Court can decide against Plaintiffs on the pleadings.

For these reasons, the Court is unpersuaded that *Muñoz* or *Yaghoubnezhad* calls into question the Court's reasoning in *Al-Gharawy*.  But to the extent any doubt might linger, the Court need not decide—definitively—whether the consular nonreviewability doctrine bars judicial review of the delay in adjudicating Plaintiff Sheikh's visa application because, as the Supreme Court and the D.C. Circuit have emphasized, consular nonreviewability is not a jurisdictional defense.  *See Muñoz*, 144 S. Ct. at 1820 n.4 (quoting *Trump v. Hawaii*, 585 U.S. 667, 682–83 (2018)); *Baan Rao Thai Rest.*, 985 F.3d at 1027.  The Court may, accordingly,

---

[3] *See also Khan*, 2022 WL 17262219, at *1 ("The Department of State publishes visa-application statuses online, but, beginning in March 2020, changed its website to display the status of applications undergoing further administrative processing as 'refused.'  This reporting change in such circumstances reflects 'no change in such applicants' actual cases.'" (internal citations omitted)).

"assume without deciding that [P]laintiffs' statutory claims are reviewable," *Trump*, 585 U.S. at 682–83, and can therefore turn to the merits.

3.      *Unreasonable Delay*

"To state a claim for unreasonable delay, Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations and quotation marks omitted). Defendant contests both points; addressing the first is unnecessary, however, because the Court agrees that any delay here is not "so egregious as to warrant mandamus." *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*"). The Court, thus, assumes without deciding that Defendant is subject to a discrete, mandatory duty to adjudicate visa applications in a timely manner.[4]

In determining whether a delay is unreasonable, the standards under the APA and the Mandamus Act are "essentially the same." *Vietnam Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). Under either statute, the central question is "whether the agency's delay is so egregious as to warrant mandamus." *TRAC*, 750 F.2d at 79. In answering this question, courts in the D.C. Circuit weigh the following six factors, commonly referred to as the *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that

---

[4] To the extent the issue is jurisdictional, it is statutory, and not constitutional, in nature. *See Rashidian v. Garland*, 2024 WL 1076810, at *5 n.5 (D.D.C. Mar. 8, 2024); *cf. Da Costa*, 80 F.4th at 340 (accepting as uncontested "assertions of a nondiscretionary duty"). And courts may "address[] the merits where doing so ma[kes] it possible to avoid a doubtful issue of *statutory* jurisdiction." *Chalabi v. Hashemite Kingdom of Jordan*, 543 F.3d 725, 728 (D.C. Cir. 2008) (emphasis in original) (quoting *Kramer v. Gates*, 481 F.3d 788, 791 (D.C. Cir. 2007)); *see also, e.g.*, *Rashidian*, 2024 WL 1076810, at *5 n.5; *da Fonseca v. Emmel*, 2024 WL 519603, at *3 (D.D.C. Feb. 9, 2024).

statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Id.* at 80 (internal citations and quotation marks omitted).  These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'"  *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.3d at 80).

Despite Plaintiffs' argument to the contrary, Dkt. 8 at 41–43, consideration of these factors is not premature.  "There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular [c]omplaint."  *Da Costa v. Immigr. Inv. Program Off.*, 643 F. Supp. 3d 1, 12 (D.D.C. 2022), *aff'd*, 80 F.4th 330 (D.C. Cir. 2023).  If the complaint and other materials properly considered at the motion-to-dismiss stage allege enough facts to evaluate the *TRAC* factors, "then a [c]ourt may appropriately decide to do just that."  *Id.*  This is such a case.[5]

a.   *Factors One and Two*

The first two *TRAC* factors, which consider "whether 'there [is] any rhyme or reason—congressionally prescribed or otherwise—for [the] agency's delay,'" *Rashidian*, 2024 WL

---

[5] On April 12, 2024, Plaintiffs filed a notice of supplemental authority, Dkt. 12, bringing to the Court's attention a six-page order entered in *Li v. Blinken*, 23-cv-2142 (C.D. Cal. Apr. 4, 2024). *See also* Dkt. 13; Dkt. 14.  On similar alleged facts, the *Li* court denied the defendants' motion to dismiss because, in its view, the *TRAC* factors were, on the facts of that case, "fact-intensive and inappropriate for resolution on a motion to dismiss."  Dkt. 12-1 at 5.  In contrast, here, the Court concludes that, accepting the factual allegations as true, the complaint fails to state a claim of unreasonable delay.

1076810, at *6 (alteration in original) (quoting *Khazaei v. Blinken*, 2023 WL 6065095, at *6

(D.D.C. Sept. 18, 2023)), favor Defendant.  Because there is no statutory or regulatory

framework within which the Department of State must adjudicate I-130 applications, the Court

turns to case law as its guide.  *See, e.g.*, *Augustin*, 2023 WL 4547993, at *5; *Eljalabi v. Blinken*,

2022 WL 2752613, at *5 (D.D.C. July 14, 2022).  Although "[t]here is 'no *per se* rule as to how

long is too long' to wait for agency action," *In re Am. Rivers & Idaho Rivers United*, 372 F.3d

413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C.

Cir. 1992)), "[d]istrict courts have generally found that immigration delays in excess of five, six,

seven years are unreasonable, while those between three to five years are often not

unreasonable," *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (alteration in

original) (internal quotation marks and citation omitted) (collecting cases).

      "There is some question as to whether the period of delay should be measured from the

initial visa application or from the most recent government action." *Tahavori*, 2024 WL

1328546, at *5; *see Barazandeh v. U.S. Dep't of State*, 2024 WL 341166, at *7 n.7 (D.D.C. Jan.

30, 2024) ("The proper method for calculating delay . . . is the length of time between the last

action the government took on a visa application and the filing of plaintiff's complaint.").  Here,

Plaintiffs' allegations primarily focus on the latter form of delay, that is, the delay since Plaintiff

Sheikh's July 2023 interview.  *See, e.g.*, Dkt. 1 at 3–5, 15–16, 18, 20, 24, 28 (Compl. ¶¶ 5–6, 9–

10, 14, 73, 75, 92, 100–01, 133, 153).  *But see id.* at 15, 27 (Compl. ¶¶ 74, 146).  The complaint

alleges that the delay lasted about five months.  A delay of that modest length is not

unreasonable under the circumstances and by comparison to similar I-130 cases.  *See, e.g.*,

*Tahavori*, 2024 WL 1328546, at *5 (finding delay of two years and three months in adjudicating

I-130 immigrant visa reasonable); *Khan v. Bitter*, 2024 WL 756643, at *5 (D.D.C. Feb. 23,

2024) (29-month delay reasonable); *Eljalabi*, 2022 WL 2752613, at *5 (nearly two-year delay

reasonable); *Barazandeh*, 2024 WL 341166, at *8 (13-month and 20-month delay both

reasonable); *Augustin*, 2023 WL 4547993, at *5 (30-month and 15-month delay both

reasonable).  And even measuring the delay from the date on which Plaintiffs filed their DS-260

application, October 14, 2021, Dkt. 1 at 3 (Compl. ¶ 2), only 26 months passed before they

brought this suit—"a long time, to be sure, but well within the two-to-three year period that

judges in this District have consistently held does not amount to unreasonable delay."  *Tahavori*,

2024 WL 1328546, at *5 (internal quotation marks and citation omitted).[6]

Plaintiffs raise several arguments in response.  First, they argue that the Department of

State does not follow a rule of reason because visa-related security "requests, are *not* addressed

or resolved in a first-in-first-out basis, which means the adjudication does not follow [a] rule of

reason."  Dkt. 8 at 45 (emphasis in original).  Plaintiffs' suggestion seems to be that, as the D.C.

Circuit contemplated in *Da Costa*, the State Department "currently is following a processing

system other than its official policy."  80 F.4th at 342.  Plaintiffs' argument is based on two

declarations from Carson Wu, the Acting Director of the Office of Screening, Analysis, and

Coordination in the Department of State's Bureau of Consular Affairs' Visa Services Office,

submitted in two different lawsuits filed in this District.  *See* Dkt. 8-3 at 1–2 (Wu Decl. 1); Dkt.

8-3 at 3–7 (Wu Decl. 2).  These exhibits are not properly before the Court on a motion to

---

[6] In their opposition, Plaintiffs suggest that the Court should count time from the date on which
Plaintiff Janay submitted the underlying I-130 petition, January 24, 2020.  Dkt. 8 at 13, 15, 49;
*see also* Dkt. 1 at 14 (Compl. ¶ 64) (stating that this date was January 24, 2020).  But Plaintiffs
do not allege any delays in the processing of their I-130 petition, which was approved on
September 16, 2021.  Dkt. 1 at 15 (Compl. ¶ 65); *see also* Dkt. 8 at 17 (acknowledging that
"[u]pon Form I-130 approval . . . the beneficiary is *able to begin the process of formally applying*
for an immigrant visa" (emphasis added)).

dismiss.  *See Antoine v. U.S. Bank Nat'l Ass'n*, 547 F. Supp. 2d 30, 38 n.4 (D.D.C. 2008).[7]  The

question that is before the Court is the adequacy of Plaintiffs' complaint, and they allege no facts

related to the "Security Advisory Opinions" that are the subject of the Wu declarations.  *See* Dkt.

8-3 at 1 (Wu Decl. 1 ¶¶ 3–4); *id.* at 3 (Wu Decl. 2 ¶ 2); *see generally* Dkt. 1 (Compl.).

      Plaintiffs next argue that the time that Plaintiff Sheikh's application has spent in

administrative processing runs counter to congressional intent.  Dkt. 8 at 50–51.  In support of

this contention, they point to 8 U.S.C. § 1571(b) and provisions of the Foreign Affairs Manual

("FAM").  Section 1571(b) states:

> It is the sense of Congress that the processing of an immigration benefit
> application should be completed not later than 180 days after the initial filing of
> the application, except that a petition for a nonimmigrant visa under section
> 1184(c) of this title should be processed not later than 30 days after the filing of
> the petition.

Plaintiffs' reliance on that language is inapposite; it applies only to the Immigration and

Naturalization Service (now, primarily, the U.S. Citizenship and Immigration Services

("USCIS")), *see El Centro Regional Med. Ctr. v. Blinken*, 2021 WL 3141205, at *4 n.2 (S.D.

Cal. July 26, 2021)), and not to the State Department, the entity before which Plaintiffs'

application is currently pending.  Although the D.C. Circuit has concluded that this "aspirational

statement . . . somewhat favors" plaintiffs who have waited longer than 180 days for an

immigration benefit, *see Da Costa*, 80 F.4th at 344, that precatory language does not

fundamentally alter the premise that visa application processing takes time and courts have been

reluctant to find unreasonable delay except in egregious circumstances.  *See id.* at 340–44

---

[7] For the same reason, the Court does not consider the other eleven exhibits appended to
Plaintiffs' memorandum in opposition.  *See* Dkt. 8.

(discussing § 1571 in the context of a claim against a subagency of the U.S. Department of Homeland Security and concluding that four-and-a-half-year delay was reasonable).

The provision of the FAM to which Plaintiffs point reads:

> Timeliness of Interview:  The interview with you is the most significant part of the visa issuing process to ensure the full and correct application of the law. Section 237 of Public Law 106-113 and subsequent legislation require that the Department establish a policy under which immediate relative (and fiancé(e)) visas be processed within 30 days of receipt of the necessary information from the applicant and the Department of Homeland Security (DHS); all other family-based IVs must be processed within 60 days.  The Department expects all IV units to strive to meet the 30/60-day requirements.

9 FAM 504.7-2(b).  Section 237 of Public Law 106-111, in turn, provides:

> (a) POLICY.—It shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens and nonimmigrant K–1 visa applications of fiancés of United States citizens within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service.

113 Stat. 1501A–430 (1999).  In relying on these provisions, however, Plaintiffs face two problems.  First, the policy merely requires that the Department "process" the applications within 30 days, but it does not require a final adjudication of the application within that period.  Here, Plaintiffs themselves allege that the Department has commenced the process of Plaintiff Sheikh's application; indeed, he has already been interviewed, which is "the most significant part of the visa issuing process."  Second, and more importantly, a policy is just that—it is not a rule or command.  The quoted material merely establishes that the Department will "strive to" achieve that goal.  Congress could have set "a statutory deadline to complete processing or adjudication of visa applications," but, rather than do so, it provided "the agencies wide discretion in the area of immigration processing."  *Meyou v. U.S. Dep't of State*, 2022 WL 1556344, at *3 (D.D.C. May 17, 2022) (quoting *Tekle v. Blinken*, 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022)).  On balance, the first and second factors favor Defendant.

b.    *Factor Four*

The fourth factor, which considers "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, also favors Defendant. Courts have "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where 'a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (alterations in original) (quoting *In re Barr Lab'ys*, 930 F.2d 72, 75 (D.C. Cir. 1991)).  "As many courts have recognized, ordering an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped." *Meyou*, 2022 WL 1556344, at *4 (collecting cases).  Ultimately, these are generally "resource-allocation decisions that do not lend themselves to judicial reorderings of agency priorities." *Khazaei*, 2023 WL 6065095, at *7 (internal quotation marks and citation omitted).

Plaintiffs' argument that there is no queue, and, accordingly, that no reordering would result from granting the relief they seek, is unsupported by any factual allegations in the complaint and is unpersuasive for the reasons described above.  *See* Dkt. 8 at 53.  And Plaintiffs' further argument that, "if there is a line, they have waited long enough to be at the front of it . . . assum[es] that the wait time to date is unreasonable and could not result from competing priorities and legitimate agency needs." *Rashidian*, 2024 WL 1076810, at *8; *see* Dkt. 8 at 51–52.  The Court, moreover, can take judicial notice of the fact that the wait time at issue in this case is relatively modest when compared with other, similar cases.

c.      *Factors Three and Five*

The third and fifth *TRAC* factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Here, Plaintiffs allege that they will suffer financial harms, including the cost of maintaining two homes, travelling to see each other, and obtaining legal representation. Dkt. 1 at 17–18 (Compl. ¶¶ 82, 87–89). Under *TRAC* and its progeny, these economic harms are entitled to less weight in the analysis. *See, e.g.*, *Bega v. Jaddou*, 2022 WL 17403123, at *7 (D.D.C. Dec. 2, 2022), *aff'd sub nom. Da Costa*, 80 F.4th 330. But Plaintiffs have also alleged non-financial harms, including the emotional strain and psychological harm of being separated as a family with a young child who has medical needs. Dkt. 1 at 4, 17–18 (Compl. ¶¶ 7–9, 88–90). Although family separation occurs in most Form I-130 cases, the interest in re-uniting families weighs in favor of avoiding undue delay. As this District has recognized, prolonged separation from a spouse or other immediate family member may threaten physical and mental wellbeing, thus creating a risk to human health and welfare. *See, e.g.*, *Eljalabi*, 2022 WL 2752613, at *7; *Khan*, 2024 WL 756643, at *5. The weight that this consideration carries, however, turns on the length of the delay—a family separation that lasts for several years raises greater concerns than one that lasts several months or even a couple of years. Here, the family separation weighs in favor of Plaintiffs, although perhaps less dramatically than in cases involving longer delays.

Defendant contends that the third and fifth factors weigh in his favor because "[e]xpediting review in this case over the applications of other noncitizens would direct resources away from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the Department's prioritization decisions and place the Visa

Application here at the front of the line." Dkt. 7 at 33. That argument is more appropriately directed at the fourth *TRAC* factor.

       d.    *Factor Six*

The sixth factor instructs that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotation marks and citation omitted). Here, it favors Defendant. Plaintiffs have not plausibly alleged that Defendant acted in bad faith in this case. *See generally* Dkt. 1 (Compl.); *see Da Costa*, 643 F. Supp. 3d at 15–16. To the extent that Plaintiffs argue Defendant's made a procedural error in adjudicating Plaintiff Sheikh's application, *see* Dkt. 8 at 56, their complaint contains no supporting factual allegations. Nor is it obvious why or how such an error would rise to the level of bad faith.

*     *     *

Considered together, the balance of the *TRAC* factors tip decidedly in Defendant's favor. The Court thus concludes that Plaintiffs have failed to state a claim for unreasonable delay under the APA and are also not entitled to mandamus relief. The Court nonetheless "recognizes that the delay . . . imposes hardship on Plaintiffs, and it encourages the Government to act on the application[s] as soon as possible." *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to compel production of the administrative record, Dkt. 9, will be denied, and Defendant's motion to dismiss, Dkt. 7, will be granted.

A separate order will issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  July 16, 2024